UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY GUTMAN,

                Plaintiff,                                Hon. Janet T. Neff

v.                                                Case No. 1:09-CV-628

GENE WRIGGELSWORTH, et al.,

                Defendants.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (Dkt. #35).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.


## BACKGROUND

        The following allegations are contained in Plaintiff's complaint.  (Dkt. #1).  Plaintiff is a member of the Jewish faith who desires to consume only kosher food.  In March 2008, Plaintiff was incarcerated in the Ingham County Jail.  Upon arriving at the jail, Plaintiff requested that he be provided kosher meals and be permitted to possess various religious items.  This latter request was denied, but Plaintiff later began receiving kosher meals.  However, these meals lacked sufficient variety and were nutritionally deficient.  In October 2008, jail officials discontinued Plaintiff's kosher meals after Plaintiff was discovered consuming and/or possessing non-kosher foods.  Plaintiff was transferred from the Ingham County Jail in December 2008.

Plaintiff initiated this action on July 9, 2009, against: (1) Gene Wriggelsworth; (2) Sam Davis; (3) Tracy Mansfield; and (4) Ingham County. Plaintiff asserts that Defendants violated his First Amendment right to freely practice his religion; his Fourteenth Amendment right to due process; and his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also asserts that Defendants violated his rights under the Civil Rights of Institutionalized Persons Act (CRIPA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff seeks declaratory, injunctive, and monetary relief. Plaintiff's RLUIPA, CRIPA, and due process claims have since been dismissed. (Dkt. #16, 18). Defendants now move for summary judgment as to Plaintiff's First and Eighth Amendment claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

### I.        **First Amendment**

Plaintiff alleges that his First Amendment right to freely practice his religion was violated when Defendants: (1) denied his request for a kosher diet; (2) failed to inform him of the rules concerning his participation in the kosher diet; (3) later removed him from the kosher diet; and (4) denied his request to possess certain religious items.

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

-5-

reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

A.     Plaintiff was Provided a Kosher Diet

Plaintiff alleges that Defendants denied his request for a kosher diet.  The precise nature of this particular claim is not clear.  It appears that Plaintiff is advancing two separate allegations: (1) his initial request to receive kosher meals was not timely approved, thereby constituting a denial of his request, and (2) the allegedly kosher meals he subsequently received were not prepared and served in accordance with kosher law and, therefore, were not actually kosher meals.

With respect to Plaintiff's claim that his request for kosher meals was not timely approved, Defendants have submitted evidence, an affidavit executed by Defendant Davis, that upon receiving Plaintiff's request for kosher meals, such was "sent to the Jail Chaplain for review and recommendation." (Dkt. #36, Exhibit 4).  It is not inappropriate for a lay jail official to forward a request for kosher meals to a religious official.  The chaplain subsequently approved Plaintiff's request, at which point Plaintiff was provided kosher meals.  (Dkt. #36, Exhibit 4).  Plaintiff has presented no evidence to the contrary.  Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

As for Plaintiff's claim that the kosher meals he was served were not properly prepared and served, the Court reaches the same conclusion.  Defendant Davis asserts in his affidavit that "Jail staff ordered separate and maintained separate cooking utensils" which were utilized when cooking and preparing Plaintiff's food.  (Dkt. #36, Exhibit 4).  Davis asserts that Plaintiff's kosher foods "were specially ordered and segregated" from non-kosher foods.  (Dkt. #36, Exhibit 4).  Davis further asserts that he instructed food service workers to prepare and present Plaintiff's food so that it "would not come in direct contact with the food trays." (Dkt. #36, Exhibit 4).  Plaintiff has presented no evidence to the contrary.  Instead, Plaintiff merely asserts that on "four or five" occasions unidentified food service

-7-

workers placed his food "onto the regular trays" in violation of proper kosher procedure. (Dkt. #36, Exhibit 3 at 45).

Plaintiff's allegations, at most, describe isolated acts of negligence committed by individuals who are not even party to this action. Claims of negligence are insufficient to maintain a § 1983 action. *See, e.g., Herndon v. Crowley*, 90 Fed. Appx. 780, 781 (6th Cir., Dec. 9, 2003) (citing *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986)); *Byerlein v. Hamilton*, 2009 WL 3255478 at *3 (W.D. Mich., Oct. 7, 2009) ("accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner") (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Likewise, allegations against individuals who are not party to the present action are insufficient to defeat a properly supported motion for summary judgment. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

### B. Plaintiff was Informed of the Jail's Rules

Plaintiff alleges that the failure by Defendants to inform him of the rules concerning his participation in the kosher diet violated his First Amendment right to freely practice his religion. This claim fails for two reasons. First, Plaintiff's allegations fail to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The alleged failure to inform Plaintiff of the relevant jail rules in no way prevented Plaintiff from practicing his faith. Furthermore, Defendant Davis asserts that Plaintiff was provided with "a copy of the rules of the Ingham County Jail" upon his arrival. (Dkt. #36, Exhibit 4). Plaintiff conceded at his deposition that upon arrival at the jail he was provided with a copy

of the jail's rules and regulations.   (Dkt. #36, Exhibit 3 at 19).   Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

### C.    Plaintiff's Removal from the Kosher Diet was Proper

Plaintiff next asserts that his removal from the kosher diet was improper and violated his right to freely practice his religion.  Plaintiff concedes that he received a copy of the jail's rules upon his arrival.  One of the rules to which he was subject was that prisoners are not permitted to take food back to their cell or trade food with other prisoners.  (Dkt. #36, Exhibit 3 at 24; Dkt. #36, Exhibit 4).  Defendant Davis asserts that Plaintiff was discovered on "numerous" occasions to have taken food back to his cell and, moreover, to have traded his kosher food items for non-kosher food items.  (Dkt. #36, Exhibit 4).  Plaintiff conceded at his deposition that he secreted food in his cell and traded his own kosher food items to other prisoners for non-kosher food items.  (Dkt. #36, Exhibit 3 at 87-89).

It is well recognized that prison officials "have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison." *Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009).  It is likewise well established that prison officials are justified in removing from a kosher meal program any prisoner who consumes non-kosher food items, as Plaintiff concedes doing.  *Id.*  Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

D.      The Denial of Plaintiff's Request for Religious Items was Proper

In his complaint, Plaintiff alleges that Defendants denied his requests for "religious items for proper Jewish observance."  Plaintiff failed to articulate in his complaint, precisely what religious items he was prevented from possessing.  Such vague allegations are insufficient to state a claim on which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 545.

In his response to the present motion, Plaintiff asserts (in an unsworn pleading) that he requested numerous religious items, including a shofar[1] and a tefillin.[1]  (Dkt. #44).  Defendant Davis asserts in his affidavit that Plaintiff's request to possess certain religious items was denied with respect to only two items, a shofar and a tefillin.  (Dkt. #36, Exhibit 4).  Plaintiff has presented no evidence to the contrary and, in fact, at his deposition acknowledged that these were the two items he was prevented from possessing.  (Dkt. #36, Exhibit 3 at 74).  Plaintiff's request to possess a shofar was denied on the ground that such an item could easily be used as a weapon.  (Dkt. #36, Exhibit 4).  There is no question that jail officials have a legitimate interest in preventing prisoners from possessing items that could be used as a dangerous weapon.  Plaintiff has failed to identify an alternative to his request that would have constituted no more than a de minimis impact on the jail's legitimate penological interests.

As for Plaintiff's request to possess a tefillin, jail officials permitted Plaintiff to use, but not possess, such.  (Dkt. #36, Exhibit 4).  Specifically, a rabbi was required to maintain and transport the tefillin into the jail, supervise Plaintiff's use of such, and then take the tefillin with him upon

---

[1] A shofar "is an instrument made from the horn of a ram or other kosher animal."  *See* Shofar, available at http://www.jewishvirtuallibrary.org/jsource/Judaism/shofar.html (last visited on September 27, 2012).

[1] Tefillin "are two small black boxes with black straps attached to them; Jewish men are required to place one box on their head and tie the other one on their arm each weekday morning."  *See* Tefillin, available at http://www.jewishvirtuallibrary.org/jsource/Judaism/tefillin.html (last visited on September 27, 2012).

departure from the jail. (Dkt. #36, Exhibit 4). Plaintiff was not permitted to *possess* the tefillin because "the straps formed both a risk as a weapon and as [a] possible method for a prisoner to harm himself or commit suicide." (Dkt. #36, Exhibit 4). Plaintiff conceded at his deposition that a tefillin could be used as a weapon. (Dkt. #36, Exhibit 3 at 38). Again, there is no question that jail officials have a legitimate interest in preventing prisoners from possessing items that could be used as a dangerous weapon. Defendants' accommodation, permitting Plaintiff to use a tefillin in a rabbi's presence, was a reasonable and constitutional compromise that accommodated Plaintiff's right to practice his religion while only minimally impacting the jail's legitimate penological interests. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

## II.        Eighth Amendment

In his complaint, Plaintiff alleges that he was "denied a nutritionally sufficient kosher diet to sustain good health." While Plaintiff included this allegation as part of his First Amendment Free Exercise claim, such is actually a claim for violation of his Eighth Amendment right to be free cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendants' conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

In his affidavit, Defendant Davis asserts that Plaintiff was provided with a nutritionally sufficient diet. (Dkt. #36, Exhibit 4). Plaintiff has presented no evidence to the contrary. In fact, at his deposition, Plaintiff conceded the following facts: (1) during his time at the Ingham County Jail, he never suffered any condition which a medical professional attributed to "malnutrition or lack of nutrition;" (2) he was never diagnosed by any medical professional as suffering from malnutrition; (3) he was never hospitalized or even examined or diagnosed by a medical professional; (4) no medical professional has ever told Plaintiff that he was "in any way malnourished, during [his] tenure at the Ingham County Jail;" (5) he has no specific information concerning the nutritional content of the diet

he was served; and (6) he has identified no expert witness who can testify that his diet during the time in question was nutritionally inadequate.  (Dkt. #36, Exhibit 3 at 80-83).  In sum, despite having had more than three years to conduct discovery and marshal evidence, Plaintiff is unable to produce any evidence that would support this claim.  As discussed above, such is a sufficient basis for granting Defendants' motion for summary judgment.

From Plaintiff's deposition testimony, it is clear that Plaintiff's complaint about his diet is not that it was nutritionally insufficient, but that it was instead not sufficiently varied for Plaintiff's tastes.  (Dkt. #36, Exhibit 3 at 82).  Specifically, Plaintiff complained that he did not receive the fruits and vegetables of his choice.  (Dkt. #36, Exhibit 3 at 82-85).  In his affidavit, Defendant Davis asserts that Plaintiff received a variety of food items, including cereal, peanut butter, hot dogs, tuna fish, fresh fruits and vegetables, crackers, matza, potato chips, oatmeal, fruitcups, rice, tortilla chips, and macaroni and cheese.  (Dkt. #36, Exhibit 4).  Plaintiff does not refute this evidence, but instead merely complains that he preferred an even greater variety of food items in his diet.

It is well accepted that prisoners have no constitutional right to any particularly diverse or varied diet.  *See, e.g., Alexander v. Carrick*, 31 Fed. Appx. 176, 179 (6th Cir., Mar. 19, 2002) (citations omitted) (so long as a prisoner receives a diet "sufficient to sustain [him] in good health, no constitutional right has been violated"); *Shirley v. Sternal*, 2010 WL 6020684 at *6 (S.D. Fla., Aug. 30, 2010) ("inmates are not entitled to be served any particular foods so long as the diet they receive is nutritionally adequate"); *Tapp v. Proto*, 718 F.Supp.2d 598, 615 (E.D. Pa. 2010) (same).  As Plaintiff has failed to present any evidence that the diet he received was nutritionally insufficient, the undersigned recommends that Defendants motion for summary judgment be granted as to this claim.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #35), be **granted** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: October 9, 2012
    /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge